UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RUFUS BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 03472 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SAC WIRELESS, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rufus Brooks has sued SAC Wireless, LLC for employment discrimination. R. 1, Compl.[1] During the course of discovery, Defendant SAC Wireless filed a motion to dismiss as a sanction for Brooks' alleged misconduct during depositions. R. 35, Mot. Sanctions. After holding a live-witness hearing and on reviewing the parties' briefing, the Court grants SAC's motion and dismisses the case with prejudice.

**I. Background**

Brooks filed this case in May 2018, alleging that he had applied for 60 positions at SAC and was not hired for any of them due to his race or age. *See generally* Compl. Discovery began, and on February 21 and 22, 2019, Brooks was scheduled to take depositions of three SAC employees, Jeff Hamm, Kevin Pope, and Wanda Rodriguez, at the Chicago office of SAC's counsel, the law firm Thompson Coburn. Mot. Sanctions

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331. Citations to the docket are noted by "R." followed by the docket number and, where necessary, a page or paragraph citation.

¶¶ 1-2. In turn, SAC's deposition of Brooks was scheduled for the afternoon of February 22. *Id.* ¶ 2. Susan Lorenc, a partner at Thompson Coburn and a counsel of record for SAC, defended the first three depositions, which were of the SAC employees (the third took place on the morning of February 22). On the afternoon of the second day of depositions (February 22), SAC filed a motion "to terminate litigation and for sanctions" alleging that Brooks had behaved aggressively and threatened a witness during the depositions. *See generally* Mot. Sanctions. SAC was so alarmed that the motion also said that Brooks would not be allowed back into Thompson Coburn's office for his deposition that afternoon. *Id.* ¶ 3. After receiving the motion for sanctions, the Court set a briefing schedule and directed SAC to supplement the motion with affidavits and transcripts to back up its allegations. R. 37, 2/23/19 Minute Order. The Court also scheduled an evidentiary hearing for April 2, 2019 at 1:30 p.m. *Id.*

## II. Legal Standard

District courts have inherent authority to sanction litigants for "conduct [that] abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). That includes the power to dismiss a case if the misconduct is egregious enough. *Id.* In order to impose sanctions, a federal court must find by a preponderance of the evidence that "the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776-79 (7th Cir. 2016) (rejecting a clear-and-convincing evidence requirement for sanctions imposed both under Rule 37 and under the Court's inherent authority).

After making that initial factual finding, a court has broad discretion to choose a sanction. That said, Seventh Circuit decisions instruct that in choosing the appropriate level of sanction to impose, a district court should keep an eye both to the egregiousness of the abuse of process alleged, as well as to whether the plaintiff should have known better. In *Ladien v. Astrachan*, the Seventh Circuit suggested that it might have reversed a dismissal if "the district court had dismissed [the] case for a *single act* of violative conduct." 128 F.3d 1051, 1057 (7th Cir. 1997) (emphasis added). But in that case, in which the plaintiff had repeatedly contacted the represented defendants directly after the court warned him not to; failed many times to respond timely and adequately to discovery requests; and threatened to pursue criminal charges against the defendants if they did not settle, the Seventh Circuit found that dismissal was not an abuse of the trial court's discretion. *Id*.

An opportunity to be heard is important too. The Seventh Circuit reversed a dismissal sanction where the plaintiff was not given a fair opportunity to respond to the allegation against him. In *Birdo v. Urbansky*, the clerk's office received a filing from the Plaintiff that contained a shard of glass. 619 F. App'x 536, 536-38 (7th Cir. 2015) (nonprecedential disposition). The district court immediately dismissed the case with prejudice, without giving the plaintiff an opportunity to contest the factual basis for the dismissal. *Id*. at 537. The Seventh Circuit reversed for that reason, noting that the plaintiff had never done anything threatening before. *Id*. at 536-38.

## III. Analysis

### A. The Fairness of Brooks's Hearing

Throughout the litigation of SAC's motion for sanctions, Brooks frequently contended that he was denied a fair opportunity to present his side of the story. That is wrong. After SAC filed its motion for sanctions on February 22, 2019, the Court ordered briefing. R. 37, 2/23/19 Minute Order. Brooks was directed to file a response by March 20 that included "pertinent evidence, including his own under-oath affidavit." *Id*. The Court also set a hearing on the motion for April 2, 2019. *Id*. The order specified not only that it would be a "live-witness" hearing but further required that the parties "*arrange for witness attendance* (including testimony by the court reporter)." *Id*. (emphasis added). On March 6, SAC filed a supplement to its motion, including affidavits from several witnesses. R. 39, Def.'s Supp. Later that month, Brooks filed his response, which made no reference to SAC's supplement or any difficulty Brooks might have had in accessing it (this becomes important later, as explained below). R. 40, Pl.'s Resp. It also failed to include an affidavit or any other evidence. *Id*. SAC then filed its reply. R. 41, Def.'s. Reply.

One day before the scheduled hearing, Brooks called the courtroom deputy to arrange to appear telephonically. R. 42, 4/1/19 Minute Order. The Court entered an order explaining that it should have been obvious that Brooks's in-person appearance would be required for a "live witness hearing." *Id*. Nevertheless, "[o]ut of mercy and not good cause," the Court allowed Brooks to appear by telephone at the hearing. *Id*. At the hearing itself, Brooks claimed for the first time that he had not received SAC's

4

supplement, R. 39, including its witnesses' affidavits. R. 44, 4/2/19 Minute Entry; R. 55-1, Def.'s Exh. A, Hrg. Tr. at 6:14-25. On the record, the Court made a finding that Brooks *had* in fact received the supplement. The Court's finding was based on the record evidence. First, the CM/ECF receipt from the filing showed that it was successfully sent to his email address. R. 44-1, CM/ECF Receipt; Hrg. Tr. at 7:1-13, 11:8-12. Second, SAC's counsel, Susan Lorenc, credibly reported that she emailed it directly to Brooks and that it did not bounce back. Hrg. Tr. at 9:4-16. Third, Brooks had participated in active litigation in the case since May 2018 without ever reporting a problem receiving CM/ECF filings to his email account. *See* Hrg. Tr. at 12:3-13:5. And finally, the supplement was required to be filed by the Court's initial order, R. 37, and referenced on the first page of SAC's reply, R. 41 ¶ 1, making it implausible that Brooks—who has not shrunk from filing motions and filing objections—would have refrained from complaining about the purported absence of the supplement after the deadline for filing it had passed.

In light of that finding, the Court declined to postpone the hearing like Brooks asked and instead offered to let him participate by telephone. Hrg. Tr. at 13:8-14:8. Brooks initially stated that the would "just listen," without asking questions. *Id*. 14:3-15:17. He then objected to Lorenc's questions throughout the hearing and conducted extensive cross-examination. *See generally id*. SAC presented six witnesses. *See generally id*.

At the end of SAC's presentation on April 2, the Court decided to continue the hearing to April 22, 2019 to give Brooks one last chance to present evidence. Brooks

5

claimed that he had video-recorded evidence of witness Jeff Hamm's deposition, and the Court ordered that he disclose it to SAC by April 9 if he planned to use it. R. 44, 4/2/19 Minute Entry. He did not disclose or file anything by April 9. On April 12, Brooks filed a witness list on the docket. R. 45, Pl.'s Witness List. The list included three video depositions, Lorenc, and three unnamed employees of either SAC or Thompson Coburn. *Id.* at 1. SAC filed a motion to quash the witness list, arguing that the video depositions were redundant with the deposition transcripts and had not been furnished to SAC by April 9, that Lorenc's testimony would be duplicative, and that the witness list was untimely. R. 46, Mot. Quash at 3-5. Brooks then filed a competing motion to continue the hearing further, because SAC had not provided its original witness list to him until the day before the April 2 hearing (despite the fact that SAC had filed its supplement with the same witnesses' affidavits *weeks* before) and because SAC had refused to provide him with contact information for the unnamed witnesses on his list. R. 48, Mot. Continue ¶¶ 9-17, 20-22. The Court denied Brooks's motion, R. 48, and granted SAC's, R. 46, because Brooks's videos were not proper under Rules 28 and 30; he did not disclose the video of Hamm's deposition on time; Lorenc's testimony would be unnecessarily cumulative; and Brooks should have subpoenaed his unnamed witnesses and sought their identities sooner. R. 49, 4/19/19 Order.

Brooks did not appear to present in-person testimony on April 22—instead, he again appeared by telephone. R. 50, 4/22/19 Minute Order. So the Court closed the record on the evidentiary hearing. *Id.* The parties submitted post-hearing briefing.

6

Brooks filed an extension motion to file his response but failed to notice it for a presentment hearing, as required by Local Rule 5.3(b). R. 57, Mot. Extension. The Court could have denied the motion on that basis, but it instead allowed Brooks to file his response late. R. 60, 8/7/19 Minute Order. The Court has considered Brooks's otherwise late-filed response, R. 61.

## B. Findings of Fact

In its post-hearing brief, SAC sets out three categories of alleged misconduct. R. 55, Def.'s Post-Hearing Br. The first is Brooks's behavior *during* his depositions on both February 21 and 22. *Id*. at 2-7. The second is Brooks's conduct *after* the deposition on February 22. *Id*. at 7-9. Finally, SAC addresses Brooks's conduct during his telephonic appearance at the April 2 hearing. *Id*. at 9-11. The Court will address the first two categories but need not address the third.

### 1. Misconduct During the Depositions

#### a. Court Reporters

SAC's first category of evidence relates to Brooks's conduct during his depositions on Thursday, February 21 and Friday, February 22. Def.'s Post-Hearing Br. at 2-7. The court reporters for both days testified about Brooks' conduct and demeanor. Annette Brewer served as the court reporter on February 21. Her initial affidavit reported that Brooks made "snide and off-the-cuff remarks deliberately directed toward both witnesses," and that he "exhibited an accusatory tone" and "sense of deliberate hostility." R. 55-2, Exh. B, Brewer Aff. at 1-2. At the hearing, she confirmed that Brooks created an "escalating uncomfortableness" and "environment

7

of contentiousness." Hrg. Tr. at 18:17-19, 21:3-10. She also credibly testified that she decided not to serve as the court reporter for the scheduled February 22 depositions because of Brooks' conduct on February 21. Hrg. Tr. at 22:12-23:12 ("It was not worth the pay.").

Steven Stefanik was the assigned court reporter on February 22. He also wrote an affidavit averring that Brooks's tone during that morning's deposition was one of "hostility" and that he "call[ed] defense counsel and their witness[] liars." R. 55-3, Exh. C, Stefanik Aff. at 1:24-2:3. At the hearing, he described Brooks's conduct as "short-tempered," with a "lack of patience." Hrg. Tr. at 61:6-10. Brewer's and Stefanik's accounts of the depositions they transcribed are very similar in their descriptions of Brooks's conduct and attitude toward opposing counsel and the witnesses. Their accounts corroborate each other, supporting that Brooks' tone and demeanor were hostile and contemptuous during the depositions at Thompson Coburn's office.

### b. Hamm and Shorette

Two other witnesses testified about the February 21 depositions, and the two allege a more specific threat made by Brooks. First, Jeff Hamm: he is an SAC employee whom Brooks deposed that afternoon. On cross-examination, Brooks elicited testimony from Hamm that the two had known each since 2001 and worked together before. Hrg. Tr. at 124:11-14. Hamm's deposition was contentious, to say the least. *Id*. at 116:14-16 ("He was provocative. He was angry. He was trying to pick a fight with me."); *id*. at 116:19-117:1 (describing an incident in which Brooks turned

8

his personal video recorder on Lorenc and started questioning her); *see also* R. 55-4, Exh. D, Hamm Aff. ¶¶ 9-11 (describing the beginning of Hamm's deposition, including Brooks' use of his own video camera over Lorenc's objection). Hamm testified credibly that he was fearful during the deposition that Brooks would physically attack Lorenc. Hrg. Tr. at 112:19-113:8 ("I remember on two occasions where I clenched … the armrest of my chair because I thought he was … going to jump across the table."); *id*. at 116:18-25; *see also* Exh. D, Hamm Aff. ¶ 26.

Most importantly, Hamm testified that at the end of the deposition, Brooks threatened him: "[H]e made the statement that, you wait until I get to Atlanta or I can't wait till I get to Atlanta." Hrg. Tr. at 114:22-24. What is important here is that Hamm lives in Atlanta (Brooks lives in Florida). *Id*. at 115:4-5. Hamm testified that Brooks grabbed his jacket, and Hamm then heard Lorenc ask, "[D]id you just threaten my client?" *Id*. at 114:25-115:2. According to Hamm, he considered informing his hometown police of Brooks' threat but ultimately did not do so. *Id*. at 115:11-16. Overall, Hamm testified that he felt unsafe during the deposition, and that he thought Brooks's threat was serious. *Id*. at 115:17-19; *id*. at 116:18-21. His account at the hearing was consistent with his original affidavit. Exh. D, Hamm Aff. ¶ 24.

Jacob Shorette, SAC's in-house corporate counsel, also attended Brooks' deposition of Hamm. Shorette wrote in his affidavit and testified at the hearing that Brooks was "confrontational and aggressive" during the deposition. Hrg. Tr. at 131:19-132:13; *id*. at 142:10-18 (testifying that Brooks at one point said to Lorenc, "[D]on't try to take control of my deposition ... I'll hit back; I'm in control of this.");

9

R. 55-5, Exh. E, Shorette Aff. ¶¶ 5-6. Most importantly, Shorette also heard Brooks say "something along the lines of, I'll see you in Atlanta," and the statement "came off as threatening or menacing." Hrg. Tr. at 133:15-134:2; Exh. E, Shorette Aff. ¶ 5(c). And, like Hamm, Shorette heard Lorenc's contemporaneous shocked reaction. Hrg. Tr. at 133:20-24 ("[Lorenc] asked what that meant."); Exh. E, Shorette Aff. ¶ 5(c) ("SAC's counsel asked if that was a threat."). He also recalls encouraging Hamm to reach out to local law enforcement in Atlanta about the threat. Hrg. Tr. at 134:14-135:8; Exh. E, Shorette Aff. ¶ 7.

Shorette was also present for the deposition on February 22. He, like Stefanik, testified that Brooks' aggressive behavior continued on that date and that Brooks called the witness and counsel liars. Hrg. Tr. at 135:9-17; Exh. E, Shorette Aff. ¶ 5(b).

### 2. After the February 22 Deposition

Next, SAC addresses Brooks's conduct after the deposition on February 22. Def.'s Post-Hearing Br. at 7-9. Three witnesses testified that Brooks was loud and aggressive when his February 22 deposition was wrapping up. First, Todd Rowden, the managing partner of Thompson Coburn's Chicago office, testified that as he was walking down the hallway, he heard someone "raising his voice and yelling" in a conference room. Hrg. Tr. at 45:14-23; R. 55-6, Exh. F, Rowden Aff. ¶ 4. Rowden walked up to the room, saw Brooks, and told him to "keep [his] voice down." Hrg. Tr. at 46:1-3. Rowden testified that Brooks responded "along the lines of, you can't tell me what to do or you can't make me do anything." Hrg. Tr. at 47:16-22; Exh. F, Rowden Aff. ¶ 5. After that encounter, Rowden decided that Brooks was a threat to

the deposition participants and that he should not be allowed back into Thompson Coburn's office for his Friday afternoon deposition. Hrg. Tr. at 48:3-7.

Second, Brian Blinstrup, Thompson Coburn's Chicago office administrator, testified that Thompson Coburn's receptionist told him there was a "confrontational" person in the conference center. Hrg. Tr. at 83:5-14. When he walked past the conference room soon after, he saw distressed expressions on the participants' faces and heard Rowden ask Brooks to be quieter, to which Brooks responded with something like, "I'll say what I want and as loud as I want." *Id.* at 85:10-86:3; *id.* at 92:14-23. Like Rowden, Blinstrup felt it would be unsafe to allow Brooks to return to the office for his afternoon deposition. *Id.* at 89:5-13.

Finally, Jacob Shorette also witnessed Brooks interact with Rowden and Blinstrup after the February 22 deposition. According to Shorette, Brooks was asked to be quieter and then said something like, "you don't tell me what to do or no one tells me what to do." Hrg. Tr. at 135:20-136:23.

### 3. Clear Evidence of Brooks' Threat to Hamm

The hearing witnesses painted a clear picture of Brooks' hostile and aggressive behavior during both the February 21 and February 22 depositions. Brewer and Stefanik—while they did not testify specifically to the threat that Hamm and Shorette recounted—credibly testified to Brooks' tone and demeanor in both depositions. The court reporters were particularly credible because they are neutral parties in the underlying dispute. Most importantly, their testimony about Brooks's overall hostility—while it might not be sanctionable in and of itself—bolsters Hamm's

11

and Shorette's allegations that Brooks' made a specific threat against Hamm. In other words, the court reporters' descriptions of Brooks' rude, confrontational, and aggressive manner make it more likely that he did in fact threaten Hamm.

Hamm and Shorette both credibly testified that Brooks made the thinly veiled threat: "I'll see you in Atlanta." To be sure, Hamm's and Shorette's versions do not match verbatim in the exact wording of the threat, but that is not surprising given that the threat came out-of-the-blue. Indeed, it would be *less* credible if Hamm's and Shorette's versions matched word-for-word. And they both remembered Lorenc's contemporaneous reaction and question ("Did you just threaten my client?"), which also helps confirm that Brooks made the threat and that he used a threatening tone. For his part, Brooks has failed to present any record evidence other than assertions in briefs.

What's more, SAC presented credible evidence on Brooks' interaction with Rowden and Blinstrup after the deposition on the morning of February 22. Although yelling at Rowden and other participants may not be sanctionable conduct on its own, like the court reporters' testimony described above, it strengthens the likelihood that Brooks threatened Hamm on February 21.

In light of the record evidence, the Court finds by a preponderance of the evidence that Brooks threatened Hamm at the end of his deposition. Indeed, the evidence would meet a clear-and-convincing standard of proof.

## C. The Appropriate Sanction

Although Brooks "only" made the one threat against Hamm, the seriousness of the misconduct justifies dismissing the case with prejudice for abuse of process. There is no reasonable and workable alternative to dismissal. Brooks has not proposed one. And short of an extreme measure like hiring security for depositions and any in-person encounters between Brooks and SAC (such as status and motion hearings, and ultimately a potential trial), there is nothing else that can alleviate the threat. SAC and Thompson Coburn have a reasonable fear for their employees' safety. Nor was a prior warning needed: threatening someone with physical harm is plainly misconduct, and Brooks' *pro se* status does not change that fact. The right sanction is to dismiss this case with prejudice.

## IV. Conclusion

For the reasons explained above, this case is dismissed with prejudice for abuse of process. The status hearing of September 19, 2019 is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 23, 2019